FILED
IN OPEN COURT

APR 14 2021

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 1:19-CR-334 |
| TAO LIU, | Hon. Leonie M. Brinkema |
| Defendant. | |

## STATEMENT OF FACTS

The United States and the Defendant, TAO LIU (hereafter "TAO"), stipulate that the allegations in Counts 3 and 8 of the superseding indictment and the following facts are true and correct, and that had the matter gone to trial, the United States would have proven the following facts beyond a reasonable doubt:

1. From in and around at least 2011 and continuing through in and around October 2020, within the Eastern District of Virginia, and elsewhere, the defendant TAO, did knowingly and intentionally combine, conspire, confederate, and agree with others, both known and unknown, to commit an offense against the United States, in violation 18 U.S.C. § 1956(a)(1)(B)(i), to wit: to conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, conspiracy to distribute cocaine, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the conspiracy, and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(h).

2. Additionally, on or about June 7, 2020, within the Eastern District of Virginia, and elsewhere, the defendant TAO, did directly and indirectly, corruptly give, offer, and promise a thing of value, to wit: approximately $1,000, to a public official with the intent to influence an official act, and influence a public official to commit and aid in committing and collude in, and allow, and to make opportunity for the commission of a fraud on the United States, and induce a public official to do an act and omit to do an act in violation of his lawful duty, in violation of 18 U.S.C. § 201(b)(1).

3. TAO joined a conspiracy whose membership and leadership, at various times, included Xizhi Li (Li), Jianxing Chen (J.Chen), Qiyun Chen (Q.Chen), George Shao Min Yu (Yu), Xueyong Wu (Wu), and others. The purpose of this organization was to help foreign drug trafficking organizations (DTOs) gather, launder, and repatriate proceeds derived from the DTOs' unlawful drug trafficking activities in the United States. Those drug trafficking activities primarily involved cocaine.

4. The conspiracy cultivated relationships with DTOs to obtain as many "contracts" as possible to move and launder their United States-based drug proceeds. In exchange, members of the conspiracy received a "commission" for conducting these pick-ups and arranging these transactions, which represented a percentage of the involved funds.

5. TAO and his co-conspirators used secretive and clandestine means to facilitate the movement of these proceeds within the United States. For example:

> a. TAO and his co-conspirators transported or caused others to transport drug proceeds across the United States so that additional money-laundering transactions could be conducted by other individuals several states away from where the proceeds were generated;

    b. Co-conspirators operated or had access to bank accounts in the United States, China, Mexico, and elsewhere. Some of these accounts were operated under the names of fictitious identities. These co-conspirators used these accounts to deposit and conduct financial transactions with drug proceeds. This included transmitting the funds to accounts in China where the money was used to purchase Chinese goods. It also included using the funds to purchase consumer goods in the United States that were ultimately shipped to China for resale. Successful completion of these transactions generated Chinese currency known as renminbi (RMB). Merchants in Latin America seeking to import goods from China purchased RMB from members of the conspiracy using the local currency of the Latin-American country. These merchants used the RMB they bought from the conspiracy to purchase goods in China and import them into Latin-American countries. Acquisition of the Latin-American currencies, often Mexican pesos, enabled conspirators, like Li, to provide the DTOs with their drug proceeds in the currency used in their home countries which disguised the illegal nature and source of the funds used by the DTOs.

6. Beginning in at least 2011, Li operated a casino, the Video Loteria Casino (hereafter "the casino"), in Guatemala City, Guatemala. Li and his co-conspirators used the casino to attract business from DTOs and as a place to meet with members of DTOs to obtain contracts to launder their United States-based proceeds. Li maintained an interest in the casino under his fictitious "Francisco Ley Tan" identity and through a Guatemalan holding company known as "MGM Golden Group." Li worked with other co-conspirators to run and operate the casino, including

3

Wu and J.Chen. Like Li, Wu and J.Chen also used the casino to attract business from and arrange contracts with DTOs to launder their United States-based proceeds.

7.   On at least one occasion during the pendency of the conspiracy alleged in Count 3, TAO accepted proceeds of unlawful activity from Li. TAO intended and did use this money to engage in money laundering. Specifically, TAO accepted money from a courier in Los Angeles. TAO then deposited this money into a Chinese bank account whose number was provided to him by Li.

8.   During the conspiracy, both Li and J.Chen employed several couriers whose job was to conduct money pickups in the United States of funds owed to foreign DTOs.

9.   One such courier was an individual hereafter known as cooperating source-1 (CS-1). Throughout 2016, CS-1 picked up money derived from the unlawful sale of cocaine in or around Virginia Beach, Virginia, located within the Eastern District of Virginia. During this same period, CS-1 traveled through the Eastern District of Virginia to obtain and transport cocaine proceeds.

10.  In March 2018, law enforcement seized a BBVA Compass brokerage account ending in 8084 that belonged to Li in his fictitious identity, "Francisco Ley Tan." Li used the account as part of the money laundering scheme described in Count Three of the superseding indictment. At the time of the seizure, the account contained $617,524.24, at least a portion of which was the proceeds of drug trafficking. At some point following the seizure, Li asked TAO to help him recover the money seized from this account. Li told TAO the account contained more than $1,000,000. TAO asked Li to send him the account information so that he could help him, which Li never did.

11. Additionally, starting in April 2020 and continuing through October 2020, TAO communicated with UC-1, a Special Agent of the Drug Enforcement Administration who posed as a money laundering associate of Li.

12. During their communications, TAO devised a plan to bribe a purportedly corrupt United States Department of State official to obtain United States passports for individuals, including TAO himself, who were not otherwise entitled to use or possess such documents. This purportedly corrupt official was also an undercover Special Agent of the United States Drug Enforcement Administration (UC-2). TAO admitted to UC-1 that he intended to obtain United States passports in exchange for $150,000 per passport.

13. On May 25, 2020, TAO sent an email to UC-1 to which he attached a completed DS-11 form to obtain a United States passport from UC-2 for himself.

14. On July 4, 2020, TAO sent an email to UC-1 to which he attached a DS-11 form to obtain a United States passport from UC-2 for an individual known as Ye Feng Ma, also known as "Chao Ma."

15. In furtherance of this scheme, TAO deposited funds, or caused funds to be deposited, into a Bank of America account ending in 4338 with associated routing number 051000017 (hereafter "the Bank of America account"), that was domiciled in Chantilly, Virginia, and controlled by law enforcement. TAO deposited or caused deposits to the account on the following occasions and in the following amounts:

| Date | Thing of Value |
|---|---|
| 6/7/20 | approximately $1,000 USD |
| 6/11/20 | approximately $4,000 USD |
| 7/5/20 | approximately $3,000 USD |

| 7/6/20 | approximately $2,000 USD |
|---|---|

TAO intended each of these payments to be both a bribe to UC-2 and TAO's share of the down payment for passports he intended to obtain. These passports were intended for TAO himself and Chao Ma.

16. The transfers from TAO to the Bank of America account on June 7 and 11, 2020, were sent from outside the United States, to wit: Hong Kong, into the United States to promote the bribery of a public official and identity fraud.

17. The acts described above were done willfully and knowingly and with the specific intent to violate the law, and not by accident, mistake, inadvertence, or other innocent reason. This statement of fact does not contain every fact known to the defendant and to the United States, and it is not intended to be a full enumeration of all the facts surrounding the defendant's charges.

18. The defendant waives any rights that the defendant may have under Fed. R. Civ. P. 11(f), Fed. R. Evid. 410, the United States Constitution, and any federal statute or rule in objecting to the admissibility of the Statement of Facts in any proceeding.

Respectfully submitted,

Raj Parekh
Acting United States Attorney

Date: 4/2/2021

By: /s/
David A. Peters
Michael P. Ben'Ary
Assistant United States Attorneys
Eastern District of Virginia
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Tel.: (703)-299-3700

Deborah Connor
Chief, Money Laundering and Asset Recovery
Section, U.S. Department of Justice, Criminal
Division

_____
Kerry Blackburn
Mary Daly
Trial Attorneys

Defendant's Stipulation and Signature

After consulting with my attorney, I hereby stipulate that the above Statement of Facts is true and accurate, and that if the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Date: 4/7/21 _____
Tao Liu,
Defendant

Defense Counsel's Signature

I am the attorney for Defendant in this case, Tao Liu. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is informed and voluntary.

Date: 4/7/21 _____
Jonathan Simms, Esq.
Counsels for Defendant